IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| GARNET DIGITAL, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 6:11-cv-647-LED |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| APPLE INC., ET AL. | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT DELL INC.'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

This is a patent infringement case. Like many cases brought by non-practicing entities against Dell, Plaintiff Garnet Digital, LLC has alleged in this case that its patent has been infringed by Dell's computers. But in this case, Plaintiff has chosen to be represented by patent attorneys that, until very recently, used to defend Dell in patent litigation asserting infringement by Dell's computers. Such representation by former counsel is prejudicial to Dell and Plaintiff's counsel should be disqualified from representing Garnet Digital.

Plaintiff's counsel are members of the Antonelli, Harrington & Thompson LLP ("Antonelli Firm"). Two members of that firm previously represented defendant Dell in a number of substantially similar patent infringement cases and, in the course of those representations, obtained Dell's confidential information including insight into the business strategies employed by Dell to counter such actions. Plaintiff's counsel have now turned on their former client and are positioned to use Dell's confidential information against Dell in this lawsuit and others.[1]

Rule 1.9 of the Texas Disciplinary Rules of Professional Conduct ("Texas Rules,") prohibits an attorney from acting adversely to a former client when: 1) the attorney is representing a new client in a matter that is substantially related to the prior representation; or 2) the attorney had access to the former client's confidential information during the prior representation and now is positioned to use that information adversely to the former client. Here,

---

[1] The following four pending patent infringement suits were also filed by the Antonelli Firm on behalf of clients adverse to Dell: *E-Contact Technologies, LLC v. Dell, et al.*, No. 1:11-cv-426 (E.D. Tex. filed Sept. 8, 2011); *MacroSolve, Inc. v. Dell, et al.*, No. 6:11-cv-490 (E.D. Tex. filed Sept. 15, 2011); *Semiconductor Ideas to the Market BV v. Dell, et al.*, No. 1:11-cv-451 (E.D. Tex. filed Sept. 13, 2011); *Secure Axcess v. Dell, et al.*, No. 6:11-cv-338 (E.D. Tex. filed June 27, 2011). Dell does not consent to the Antonelli Firm's representation of clients adverse to Dell. Dell has moved, or will move, to disqualify the Antonelli Firm as counsel for the plaintiffs in these cases.

both prongs of Rule 1.9 are satisfied and require that Plaintiff's counsel be disqualified from representing Plaintiff in this action adverse to Dell.

## I. FACTUAL BACKGROUND

Plaintiff's counsels Matthew Antonelli, Zachariah Harrington, and Larry Thompson worked at the Weil, Gotshal & Manges ("Weil Firm") as patent litigators, respectively, for approximately ten years, from 2000 to 2010, for Mr. Antonelli, approximately four years, from 2004 to 2008, for Mr. Harrington, and approximately five years, from 2005 to 2010, for Mr. Thompson. In 2010, Messrs. Antonelli, Harrington and Thompson left Weil to establish their own firm, the Antonelli Firm. They are the three principal lawyers at the Antonelli Firm, and they market and advertise their firm as being a small firm where each lawyer is personally involved. Indeed, they specifically contend that in staffing cases, "a lean team of experienced attorneys—with personal stakes in your case—will work it from start to finish, achieving efficiencies that are simply not possible in big law firms." Antonelli, Harrington & Thompson LLP—Our Firm, *available at* http://ahtlawfirm.com/our-firm (last visited Dec. 7, 2011).

While working at the Weil Firm, Messrs. Antonelli and Harrington represented Dell in patent infringement cases. Specifically, Messrs. Antonelli and Harrington both represented Dell in *MicroUnity Sys. Engineering, Inc. v. Dell, et al.*, 2:04-cv-120 (E.D. Tex. filed Mar. 26, 2004), and Mr. Antonelli represented Dell in *Fenner Investments, Ltd. v. Dell, et al.*, 6:08-cv-273 (E.D. Tex. filed June 27, 2008). Through these cases, the Antonelli Firm, and particularly two of its three lawyers, Messrs. Antonelli and Harrington, gained access to privileged and confidential information of Dell.

### A. Former Representation Of Dell In The *MicroUnity* Case

In the first of these former representations of Dell, MicroUnity Systems Engineering ("MicroUnity") sued Dell. Messrs. Antonelli and Harrington defended Dell against MicroUnity's allegations of patent infringement of eight United States patents. Seven patents involved media processors.[2] Collectively, these seven media processor patents "describe an invention designed to consolidate the functions of several separate processors into a single processor for processing multi-media digital communications." *MicroUnity*, Dkt. No. 167 at 6, Claim Construction Order. MicroUnity also asserted Patent No. 5,630,096 against Dell.[3] This patent describes a memory controller, which can reorder memory requests, to make more efficient use of the processor. *Id.* MicroUnity alleged that Dell's sale of a wide range of products, including desktop computers, notebook computers, and servers using Intel microprocessors, infringed the patents-in-suit.

The parties litigated the *MicroUnity* case to the eve of trial. They engaged in extensive discovery, including the review and production of documents and the depositions of numerous witnesses. In preparation for trial, the parties identified potential witnesses and exhibits. *MicroUnity*, Dkt. No. 195-96. A week before trial, the parties settled the dispute, and the case was dismissed with prejudice on November 8, 2005. *MicroUnity*, Dkt. No. 207.

Mr. Antonelli's representation of Dell in *MicroUnity* began in October 2004 and lasted until October 2005, during which time he billed over 2,200 hours to Dell for his work. Peterman

---

[2] The asserted patents are U.S. Patent No. 5,742,840, Patent No. 5,794,060, Patent No. 5,794,061, Patent No. 5,809,321, all of which concern a "General Purpose, Multiple Precision Parallel Operation, Programmable Media Processor"; Patent No. 6,584,482, involving a "Multiplier Array Processing System With Enhanced Utilization At Lower Precision"; Patent No. 6,643,765, involving a "Programmable Processor With Group Floating Point Operations"; and Patent No. 6,725,356, concerning "System With Wide Operand Architecture, And Method."
[3] This patent is titled a "Controller For A Synchronous DRAM That Maximizes Throughput By Allowing Memory Requests And Commands To Be Issued Out Of Order."

Decl. Exhibit 1, Antonelli billing records for *MicroUnity*.  In representing Dell, Mr. Antonelli's work included the following significant activities:

- Filing a notice of appearance on behalf of Dell;
- Preparing Dell's amended answer;
- Constructing Dell's invalidity arguments;
- Giving presentations on claim constructions;
- Preparing Dell's expert reports and declarations, including reports for Richard Killworth, Ray Mercer, and Steve Wicker;
- Constructing Dell's inequitable conduct defense;
- Participating in several jury studies;
- Revising Dell's witness list; and
- Drafting motions *in limine* in preparation for trial.

*MicroUnity*, Dkt. No. 76; Peterman Decl. Exhibit 1, Antonelli billing records for *MicroUnity*.

During Mr. Antonelli's yearlong representation of Dell, he revised Dell's expert reports for Richard Killworth, Ray Mercer, and Stephen Wicker.  Peterman Decl. Exhibit 1, Antonelli billing records for *MicroUnity*.  Mr. Antonelli also revised Dell's witness list, which included Michael Dell, founder, chairman, and Chief Executive Officer of Dell.  *MicroUnity*, Dkt. No 195.  He also deposed MicroUnity witnesses Leonard Guzman, Kenneth Cage, Michael Fogarty, and Lawrence Cullen on behalf of Dell.  *Id.*  Mr. Antonelli's extensive contact with Dell experts alone gave him an integral role in engineering Dell's defense and exposure to Dell's litigation strategies.

Mr. Harrington's representation of Dell in *MicroUnity* began in October 2004 and lasted until October 2005.  Peterman Decl. Exhibit 2, Harrington billing records for *MicroUnity*.

During this time, Mr. Harrington billed over 200 hours. *Id*. In representing Dell, Mr. Harrington's significant activities included:

- Meeting with invalidity experts for preparation of expert reports on behalf of Dell;
- Overseeing Dell experts in the drafting of their reports;
- Revising the settlement agreement;
- Selecting potential Dell patent practice experts;
- Strategizing Dell's invalidity issues;
- Drafting a motion to amend preliminary infringement contentions; and
- Deposing MicroUnity witnesses on behalf of Dell.

*Id*.

Mr. Harrington, like Mr. Antonelli, played an active and critical role in Dell's defense. Specifically, Mr. Harrington met with several Dell experts on August 1-2, 2005, for almost 20 hours to review prior art in preparation for trial and prepare Mr. Wicker's expert report. *Id*. After meeting with Dell's expert, Mr. Harrington proceeded to "research and contact potential patent practice experts" on behalf of Dell. *Id*. On August 16, 2005, Mr. Harrington relayed his findings to Dell's legal team in a conference call. *Id*. Just a few weeks later, Mr. Harrington was working on Dell's settlement papers. *MicroUnity*, Dkt. No. 207.

Cumulatively, Messrs. Antonelli's and Harrington's representation of Dell resulted in over 2,500 billed hours and provided them with access to confidential and privileged information that is material to Dell's defense in this litigation.

### B. Former Representation Of Dell In The *Fenner* Case

While at the Weil Firm, Mr. Antonelli also defended Dell in the *Fenner* case. Specifically, Mr. Antonelli defended Dell against allegations of infringing two United States

patents.[4]  Fenner Investments ("Fenner") owned a group of patents related to network communications. *Fenner*, Dkt. No. 84 at 2. These patents broadly relate to packeting and filtering of packets over a network. *Id.* Fenner accused a large number of Dell's products, including various Dell PowerConnect switches and PowerEdge blade servers. Newton Decl. ¶ 3.

As in the *MicroUnity* case, this case was hard-fought. Mr. Antonelli and his colleagues at the Weil Firm handled all aspects of discovery for Dell, including production of documents and deposition defense for witnesses. Newton Decl. ¶ 13. Approximately one week before trial was scheduled to begin, the parties agreed to settle, and the court granted a request for dismissal with prejudice on May 19, 2010. *Fenner*, Dkt. No. 337.

Mr. Antonelli's representation of Dell began in November 2008 and lasted until late February 2009. During this time, Mr. Antonelli billed over 100 hours. In representing Dell, Mr. Antonelli's work included the following significant activities:

- Discussing with Dell employees the operation of the accused products;
- Collecting and reviewing relevant Dell documents;
- Developing Dell's non-infringement arguments;
- Participating in Dell's weekly joint defense calls;
- Developing and drafting Dell's invalidity contentions; and
- Developing and drafting Dell's claim construction.

Peterman Decl. Exhibit 3, Antonelli's billing records for *Fenner*.

Throughout Mr. Antonelli's representation of Dell, he had access to and indeed met with attorneys from Dell's in-house legal department and Dell engineers. In fact, Mr. Antonelli

---

[4] These patents are U.S. Patent No. 7,145,906, involving a "Packet Switching Node," and Patent No. 5,842,224, involving a "Method And Apparatus For Source Filtering Data Packets Between Networks Of Differing Media."

participated in a critical meeting held at Dell corporate headquarters in Round Rock, Texas, on January 28, 2009. Newton Decl. ¶ 9. Mr. Antonelli flew to Round Rock, Texas, from New York for this meeting. *Id.* Specifically, Mr. Antonelli met with Dell in-house attorneys Anthony Peterman (Chief Intellectual Property ("IP") Counsel), and Renee Meisel (Senior Counsel specializing in the storage and production of documents). Newton Decl. ¶ 11. Mr. Antonelli also met with and interviewed Dell engineers Darryl Hanson, Luis Moreira (Senior Program Manager for Networking Products), and Joseph Ferrell on January 28, 2009, to discuss, among other things, product development, procedures, and processes. Newton Decl. ¶ 10. Particularly, they discussed Dell programs for developing new products, how Dell products are configured, how Dell products are used, and the process by which Dell produces documents relating to these processes. *Id.* They also likely discussed Dell's defense strategy and IP strategy. *Id.*; Peterman Decl. Exhibit 3, Antonelli's billing records for *Fenner*.

Mr. Antonelli's meeting with Mr. Peterman present was critical, because Mr. Peterman is the Executive Director of Intellectual Property for Dell and he has intimate familiarity with Dell's licensing strategy and patent infringement defense litigation strategy. Peterman Decl. ¶ 4; Newton Decl. ¶ 10.

Mr. Antonelli's meeting with Ms. Meisel present was also critical, because she directs Dell's process for producing documents during discovery. Peterman Decl. ¶ 4; Newton Decl. ¶ 11. Mr. Antonelli's interview of Dell engineers Joseph Farrell and Darryl Hanson is also significant, because Fenner deposed both key witnesses later in the litigation. Newton Decl. ¶ 11. During this meeting with Dell personnel, Mr. Antonelli would have learned Dell's system for product creation and Dell's strategies during discovery, both of which constitute a defense approach unique to Dell by necessity. Peterman Decl. ¶ 4; Newton Decl. ¶ 10. Mr. Antonelli

also spoke with Luis Moreira about pulling sales detail from Dell's main database for sales detail. Newton Decl. ¶ 12. This confidential information is relevant for every patent case against Dell. Therefore, during Mr. Antonelli's representation of Dell, he acquired confidential institutional knowledge about Dell that is relevant to Dell's defense in this litigation. *See* Peterman Decl. ¶ 12; Newton Decl. ¶¶ 10, 14.

Mr. Antonelli also was a member of the email group "dell-fenner.joint.defense@weil.com," which transmitted and received confidential Dell information used in the course of the Fenner lawsuit. Newton Decl. ¶ 6. As a member of this email group, Mr. Antonelli had access to many confidential Dell communications. *Id.*

    C.    **Nature Of The *Garnet Digital* Case Adverse To Dell**

This is a patent infringement action filed by the Antonelli Firm on behalf of Garnet Digital, LLC against 33 defendants, including Dell, alleging infringement of U.S. Patent No. 5,379,421 (the "'421 patent"), which concerns an "Interactive Terminal for the Access of Remote Database Information." Garnet Digital's claim against Dell is one of five patent infringement actions in which the Antonelli Firm currently is representing plaintiffs suing Dell. Garnet Digital accuses Dell's Venue smartphone products of infringing one or more of the '421 patent's twenty-two claims. Dell has not yet been provided with Garnet Digital's infringement contentions.

At the time of the filing of this motion, Dell has not yet answered Plaintiff's complaint and discovery has not yet begun. Antonelli and Harrington have both filed a notice of appearance on behalf of Garnet Digital.

## II. ARGUMENT

### A. Texas Disciplinary Rule 1.09.

Rule 1.09 of the Texas Rules reads in pertinent part:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

. . .

(2) if the representation in reasonable probability will involve a violation of rule 1.05; or

(3) if it is the same or a substantially related matter.

Tex. Disciplinary Rules Prof'l Conduct R. 1.09; *see also In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) (holding that the Texas Rules and the federal test for disqualification are similar). Applying this Rule, the Fifth Circuit recognizes two bases for disqualifying counsel: (1) if the subject matter of the present and former representation are substantially related; or (2) if the movant's former attorney possesses relevant, confidential information such that there is a reasonable probability that the information could be used to the former client's disadvantage. *Abney v. Wal-Mart*, 984 F. Supp. 526, 528 (E.D. Tex. 1997); *see* Model Rules of Prof'l Conduct R. 1.9; Tex. Disciplinary Rules Prof'l Conduct R. 1.09(a)(2), (a)(3).

In patent cases, purely procedural issues are governed by regional circuit law, and "substantive matters unique to patent law" are governed by Federal Circuit law. *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 n.3 (Fed. Cir. 1998). Substantive matters unique to patent law include questions of relevance. *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006). Federal Circuit law also governs matters "intimately involved in the substance of enforcement of the patent right." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006). Here, the question of whether a prior patent case is

substantially related to a current patent case is governed by Federal Circuit precedent. *See EchoStar*, 448 F.3d at 1298.

### B. Antonelli Firm's Current Representation Of Garnet Digital Is Substantially Related To Its Prior Representation Of Dell

In determining whether a substantial relationship exists, the applicable test is whether the past representation bears "more than a superficial relationship" to the present action. *In Re Riles*, No. 620, 2000 WL 1062086, at *3 (Fed. Cir. July 20, 2000) (adhering to Fifth Circuit precedent). A more than superficial relationship exists if the past and present representations are similar in such a way that a reasonable person would "understand as important to the issues involved." *In re Corrugated Container*, 659 F.2d 1341, 1346 (5th Cir. 1981); *Riles*, 2000 WL 1062086, at *1.

In applying the "more than superficial relationship" test, courts look at whether an attorney has, through his prior representation of a former client, gained information relating to that client's practices and procedures that are the subject matter of the present suit. *Duncan*, 646 F.2d at 1032; *see American*, 972 F.2d at 625 (finding a substantial relationship when both matters involved American Airline's travel agency commission's practices and procedures). "Evaluation of the 'subjects' of the representations is broader than the discrete legal and factual issues involved in the compared representations." *Genentech, Inc., v. Sanofi-Aventis Deutschland GMBH*, No. C:08-04909 SI, 2010 WL 1136478, at *6 (N.D. Cal. Mar. 20, 2010) (quotation omitted). A broad test "is necessary because a test that applies a strict comparison of the two representations to their precise legal and factual issues might operate unrealistically to the detriment of the first client," because it fails to recognize that "an attorney may acquire confidential information about the client or the client's affairs which may not be directly related" to the lawsuit at hand. *Genentech*, 2010 WL 1136478, at *6 (quotation omitted); *see M-I LLC v. Stelly*, No. 4:09-cv-1552, 2010 WL 2196281, at *7 (S.D. Tex. May 26, 2010) (acknowledging

that the Fifth Circuit recognizes common subject matter as a basis for a "substantial relationship"); *see also Riles*, 2000 WL 1062086, at *1 (sustaining the disqualification of three attorneys who had institutional knowledge of their former client, even though the former and current matters did not involve the same patent).

In *Riles*, the Federal Circuit denied a mandamus petition from an order disqualifying counsel because it found that the three attorneys' institutional knowledge of their former client bore more than a "superficial relationship" to the past representation. *Riles*, 2000 WL 1062086, at *3. The Federal Circuit was not persuaded by the petitioner's argument that a court must examine whether the representations involve the same patents, issues, facts, and evidence. *Id*. Rather, the court held that extensive contact and knowledge gained from prior contacts were sufficient for a substantial relationship to exist. *Id*. The district court determined: (1) the three attorneys had knowledge of their former client's settlement and litigation strategy in patent litigation; (2) they had billed to a "variety of patent matters" for their former client; and (3) they had contact with personnel leading to the acquisition of confidential information, such as their former client's prelitigation, settlement, and litigation practices in patent disputes. *Id*. at *1. These factors, according to the court, warranted disqualification.

Here, more than an superficial relationship exists between the *Fenner* and *MicroUnity* cases, on one hand, and the current *Garnet Digital* case. Dell directed the design, manufacture, and marketing of the Dell Venue smartphones, much like any of its other computer products. There is nothing in Garnet Digital's complaint that suggests that this case is any different than any other patent infringement case involving Dell's computers.

Further, there is more than a superficial relationship between Dell's strategies in handling these three cases. The Federal Circuit has indicated that knowledge of "litigation and settlement

strategies in infringement actions" can create more than a superficial relationship. *Riles*, 2000 WL 1062086, at *3; *see also Mitchell v. Metro. Life Ins. Co.*, No. 01 Civ. 2112 (WHP), 2002 WL 441194, at *6 (S.D.N.Y. Mar. 21, 2002) (disqualifying an attorney who had sufficient knowledge to attack her former client's practices and policies).

Here, Dell has dozens of patent infringement cases pending against it at any one time. Peterman Decl. ¶ 3. By necessity, Dell has developed confidential strategies for defending these cases. Peterman Decl. ¶ 4. By reason of his work for Dell on the *Fenner* case, Mr. Antonelli gained critical insight and familiarity into these strategies. In essence, he learned Dell's playbook for responding to allegations of patent infringement and defending patent infringement litigation. The use of the same strategies in all three of these cases means that there is more than a superficial relationship between these cases.

### C. The Antonelli Firm Had Access To Relevant Confidential Information And A Reasonable Probability Exists That The Firm Will Use This Information To Dell's Disadvantage.

The second, alternative prong of Texas Rule 1.09(a)(2) requires disqualification if the present representation in reasonable probability will involve a violation of Texas Rule 1.05. Texas Rule 1.05(b)(3) prohibits the use of "confidential information of a former client to the disadvantage of the former client after the representation is concluded," and includes both privileged and unprivileged information. Tex. Disciplinary Rules Prof'l Conduct R. 1.05(a), (b)(3). The moving party does not have to disclose "exactly" what information was disclosed to the attorney, and an attorney's assertion that he does not recall a former client communicating confidential information is not controlling. *Islander East Rental Program v. Ferguson*, 917 F. Supp. 504, 512-13 (S.D. Tex. 1996). Rather, the moving party must "adequately identify the disclosures made to [his former attorneys] . . . to allow the Court to determine whether

disqualification is warranted under the confidential information theory." *Abney*, 984 F. Supp. at 529 (quotation omitted). Further, the length of time between the former attorney's access to the information and the work adverse to the former client is irrelevant. *Smith & Nephew, Inc. v Ethicon, Inc.*, 98 F. Supp. 2d 106 (D. Mass 2000) (disqualifying plaintiff's law firm because one of its "of counsel" attorneys had performed work for former client 15 years prior and noting that the passage of time and "a lawyer's assertion of less than perfect recall is not the controlling consideration").

Here, the Antonelli Firm bears the burden of showing that it does not have access to confidential information. Indeed, because a substantial relationship has been established between the Antonelli Firm's representation of Dell in *MicroUnity* and *Fenner* and this case, an irrefutable presumption arises that the Antonelli Firm possesses confidential information. *Abney v. Wal-Mart*, 984 F. Supp. 526, 529 (E.D. Tex. 1997). Even if the presumption did not apply, the record is clear that Dell's former lawyers currently at the Antonelli Firm had access to Dell confidential information. During the course of the *MicroUnity* and *Fenner* cases, Messrs. Antonelli and Harrington learned non-public information about the various business units at Dell, including information about Dell's engineering, sales, and marketing teams. They also gained knowledge about Dell's financial data, in particular how Dell stores sales information. Finally, they learned Dell's strategies for responding to allegations of patent infringement and its litigation strategies for handling actual claims of infringement. *See supra* Part I.A-B.

Given the types of confidential information to which the Antonelli Firm lawyers were privy, the relatedness of the representations, and the fact that their representations of Dell were so recent—one concluding just last year—more than a reasonable probability exists that the Antonelli Firm will use this confidential information to Dell's detriment. This case is likely to

result in long and protracted litigation. In the course of this case, Dell will likely use many of the strategies that the Antonelli Firm had access to through its meetings with Dell and its work on the *MicroUnity* and *Fenner* cases.

> D. **Disqualification Of The Antonelli Firm Is Necessary To Ensure The Loyalty Of Dell's Former Counsel**

Although a breach of the duty of loyalty and a showing of prejudice are not necessary for disqualification, the Texas Rules establish that "loyalty and confidentiality" are "the interests protected by the substantial relationship test" underlying disqualification of former counsel. *In re American Airlines, Inc.*, 972 F.2d 605, 618 (5th Cir. 1992); *see* Tex. Disciplinary Rules Prof'l Conduct R. 1.06 cmt. 1 ("Loyalty is an essential element in the lawyer's relationship to a client."). Because "the substantial relationship test is concerned with both a lawyer's duty of confidentiality *and* his duty of loyalty, a lawyer who has given advice in a substantially related matter must be disqualified, whether or not he has gained confidences." *American*, 972 F.2d at 619 (emphasis in original). Disqualification is necessary to instill public trust "in the legal system as a means for adjudicating disputes." *E.F. Hutton & Co. v. Brown*, 305 F. Supp. 371, 395 (S.D. Tex. 1969). The Antonnelli Firm lawyers have been disloyal to Dell.

Their disloyalty to Dell in this case is not an isolated instance. To the contrary, the Antonnelli Firm has effectively declared war on Dell by recently filing five patent infringement lawsuits against Dell. In each case, the patents at issue and accused products are more than superficially related to the Antonelli lawyers' prior representation of Dell. *Garnet Digital, LLC v. Dell, et al.*, No. 6:11-cv-647 (E.D. Tex. filed Dec. 2, 2011); *MacroSolve, Inc. v. Dell, et al.*, No. 6:11-cv-490 (E.D. Tex. filed Sept. 15, 2011); *Semiconductor Ideas to the Market BV v. Dell, et al.*, No. 1:11-cv-451 (E.D. Tex. filed Sept. 13, 2011); *E-Contact Tech., LLC v. Dell, et al.*, No. 1:11-cv-426 (E.D. Tex. filed Sept. 8, 2011); *Secure Axcess v. Dell, et al.*, No. 6:11-cv-338 (E.D.

Tex. filed June 27, 2011). In each case, the patents at issue and accused products are more than superficially related to the Antonelli lawyers' prior representation of Dell.

Moreover, because the Antonelli Firm is composed of only three principal attorneys, it is not possible to screen the conflicted lawyers from the Dell matters. *See Mitchell*, 2002 WL 441194, at *6 (screening measures put in place at a 12-lawyer office were insufficient). Disqualifying the entire Antonelli Firm is the only way to ensure that Dell's confidential information is not being used to Dell's disadvantage.

Disqualification of the Antonelli Firm will not unduly prejudice Garnet Digital. Garnet Digital filed a bare-bones complaint in this case a little more than one month ago. Merits discovery has not begun. Further, the Antonelli Firm has not had a longstanding relationship representing Garnet Digital. *See SuperGuide Corp. v. DirectTV Enter., Inc.*, 141 F. Supp. 2d 616, 624 (W.D.N.C. 2001) (weighing an attorney's tenure and the many hours devoted to litigation in deciding whether a client would be prejudiced by having to choose new counsel).

## III. CONCLUSION

For the foregoing reasons, the Antonelli Firm should be disqualified from representing Plaintiff Garnet Digital, LLC in this case.

Date: January 9, 2012                    By:    /s/ *Roger Fulghum*
                                                Roger Fulghum
                                                Texas State Bar No. 00790724
                                                Christopher Ponder
                                                Texas State Bar No. 24065916
                                                BAKER BOTTS L.L.P.
                                                One Shell Plaza
                                                910 Louisiana
                                                Houston, Texas 77002-4995
                                                Telephone:  (713) 229-1707
                                                Facsimile:   (713) 229-2707
                                                E-mail: roger.fulghum@bakerbotts.com
                                                E-mail: chris.ponder@bakerbotts.com

                                                Deron R. Dacus
                                                Texas Bar No. 00790553
                                                RAMEY & FLOCK, P.C.
                                                100 East Ferguson, Suite 500
                                                Tyler, TX  75702
                                                Telephone:  (903) 597-3301
                                                Facsimile:   (903) 597-2413
                                                Email: ddacus@rameyflock.com

                                                ATTORNEYS FOR DELL INC.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically on January 9, 2012 pursuant to Local Rule CV-5(a) and has been served on all counsel who are deemed to have consented to electronic service.

By: /s/ *Roger Fulghum*
Roger Fulghum

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendant Dell has complied with Local Rule CV-7(h), and counsel for Plaintiff Garnet Digital, LLC has indicated that Dell's Motion to Disqualify Plaintiff's Counsel is opposed. On December 22, 2011, Dell counsel Deron Dacus and Chris Ponder conferred by phone with counsel for Plaintiff, Matthew Antonelli. After discussing the issues presented in Dell's Motion to Disqualify Plaintiff's Counsel, counsel for Dell and Plaintiff reached an impasse that requires resolution by the Court.

By: /s/ *Chris Ponder*
Chris Ponder

## AUTHORIZATION TO FILE DECLARATION EXHIBITS UNDER SEAL

The undersigned certifies that Peterman Declaration Exhibits 1-3 to the foregoing document are being filed "under seal" pursuant to Defendant Dell Inc.'s Unopposed Motion for Leave to File Under Seal Peterman Declaration Exhibits 1-3, Dkt. No. 92.

By: /s/ *Roger Fulghum*
Roger Fulghum